IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| v. | ) |
| | ) |
| FELICIA TSOA, | ) 1:13cr137 (JCC) |
| | ) |
| Defendant. | ) |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on three motions by Defendant Ging-Hwang Tsoa, a/k/a "Felicia Tsoa," ("Tsoa" or "Defendant"): Defendant's Motion to Dismiss Indictment ("Motion to Dismiss") [Dkt. 24], Motion for a Bill of Particulars [Dkt. 26], and Motion for Entry of a Discovery Order that Complies with Due Process and the Federal Rules of Criminal Procedure and Evidence ("Discovery Motion") [Dkt. 30]. For the following reasons, the Court will deny Defendant's Motion to Dismiss, deny Defendant's Motion for a Bill of Particulars, and grant in part and deny in part Defendant's Discovery Motion.

**I.  Background**

On April 4, 2013, a grand jury sitting in the Eastern District of Virginia returned a seven-count indictment against Robert Mikail and Felicia Tsoa. [Dkt. 1.] Count 1 charges all defendants with conspiracy to commit bank fraud in violation of 18 U.S.C. §1349. Count 2-3 charge all defendants with bank

1

fraud in violation of 18 U.S.C. §§ 1344 & 2, and Counts 4-7 charge only Defendant Mikail with bank fraud in violation of 18 U.S.C. §§ 1344 & 2. Joint trial is set for August 26, 2013.

Defendant Tsoa filed three motions on May 9, 2013, moving to dismiss the indictment [Dkt. 24], for a bill of particulars [Dkt. 26], and for a modified discovery order [Dtk. 30]. The Government filed its opposition briefs on May 16, 2013. [Dkts. 33, 34, 36.] Defendant replied on May 20, 2013. [Dkts. 37, 38.]

Defendant's motions are now before the Court.

## II. Analysis

A. <u>Motion to Dismiss</u>

Defendant moves to dismiss Counts 1-3 of the indictment because they allegedly "fail[] to sufficiently plead the offenses charged" and "fail[] to provide adequate notice to the defendant of the charges that she must prepare to meet at trial." (Def. MTD Mem. at 1.)

Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Courts in this district have found that an indictment is sufficient if it "(i) sets forth the essential elements of the offense, (ii) fairly informs the defendant of the nature of the charges against him so that he may prepare his defense, and

(iii) enables the defendant to plead the defense of double jeopardy in a future prosecution for the same offense." *United States v. Cuong Gia Le*, 310 F. Supp. 2d 763, 772 (E.D. Va. 2004) (footnote omitted) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974), and *United States v. Daniels*, 973 F.2d 272, 274 (4th Cir. 1992)). "Typically, an indictment adequately sets forth the elements of the offense if it tracks the language of the relevant criminal statute provided that that language 'fully, directly, and expressly, without any uncertainty or ambiguity, sets forth all the elements necessary to constitute the offense intended to be punished.'" *Id.* at 773 (quoting *Hamling*, 418 U.S. at 117). The indictment also must contain "a brief statement of the facts and circumstances of the alleged offense." *Id.* These facts "should be sufficiently detailed to apprise the defendant of the charge against him so that he may prepare his defense." *United States v. Duncan*, 598 F.2d 839, 848 (4th Cir. 1979). In doing so, however, the indictment "need not set forth with detail the government's evidence; nor need it enumerate 'every possible legal and factual theory of defendants' guilt.'" *Id.* (quoting *United States v. American Waste Fibers Co.*, 809 F.2d 1044, 1047 (4th Cir. 1987)); *see also United States v. Brandon*, 150 F. Supp. 2d 883, 884 (E.D. Va. 2001), *aff'd United States v. Brandon*, 298 F.3d 307 (4th Cir. 2002) ("In general, if an indictment sets forth the essential

elements of the offense in sufficient detail so as fairly to inform the defendant of the nature of the charge, then it is immune from attack on a motion to dismiss.").

The Court finds that the Count 1 of the indictment, charging conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, and Counts 2-3, charging bank fraud in violation of 18 U.S.C. §§ 1344 and 2, are well-pleaded as these counts set forth the essential elements of the offenses by tracking the language of the statutes and provide sufficiently detailed statements of the facts and circumstances of the alleged offenses.

First, Count 1 sufficiently pleads conspiracy to commit bank fraud. The elements of a conspiracy to commit bank fraud are (1) an agreement among two or more persons to commit bank fraud, and (2) defendant's knowing and deliberate participation in the conspiracy with the intent to commit bank fraud. *See* Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, Federal Jury Practice and Instructions, § 31:03 (6th ed. 2008); *United States v. Chinasa*, 489 Fed. App'x 682, 685 (4th Cir. 2012) (finding that there is no overt act requirement under § 1349, unlike the general conspiracy statute, 18 U.S.C. § 371); *compare* 18 U.S.C. § 371 (requiring proof of overt act and intent to defraud United States) *with* 18 U.S.C. § 1349 (omitting such requirements). Defendant asserts that Count 1 fails to plead

4

sufficiently an agreement to commit bank fraud.[1]  A review of
Count 1 shows otherwise.  In that count, the indictment alleges
that Defendant knowingly and intentionally entered into an
agreement with Mikail and others to commit bank fraud (Indict.,
Count 1 ¶ 7 (alleging defendants "did knowingly and
intentionally combine, conspire, confederate, and *agree* among
themselves and with others known and unknown to the Grand Jury
to commit bank fraud") (emphasis added)), and that the "primary
purpose of the conspiracy was to defraud lenders into lending
funds for home mortgages and to profit through fraudulent real
estate transactions" (*id.* ¶ 8).  In alleging an agreement to
commit bank fraud, as quoted above, the indictment "tracks the
language of the relevant criminal statute," § 1349.  *Cuong Gia
Le*, 310 F. Supp. 2d at 773.  In addition, Count 1 contains facts
sufficient to place Defendant on notice of the overall charge
against her, as laid out in particular in the Overt Acts section
of the indictment.  *U.S. v. Loayza*, 107 F.3d 257, 261 (4th Cir.
1997); (Indict., Count 1 ¶¶ 14-28.)  Further detail is not
necessary to sustain Count 1.  It is unnecessary for the
Government to lay out in the indictment its evidence of specific
discussions giving rise to the alleged agreement to commit bank
fraud.  *See Cuong Gia Le*, 310 F. Supp. 2d at 773 n. 8

---

[1] Since proof of one or more overt acts and an intent to defraud the United States are not essential elements of conspiracy to commit bank fraud, the Court rejects Defendant's argument that Count 1 fails to plead these elements sufficiently.

("[Defendant] understandably, wants the government to disclose its theory of the case and the supporting evidentiary facts. 'This is not and never has been required at the indictment stage . . . .'") (quoting *Loayza*, 107 F.3d at 261).

Second, Counts 2-3 sufficiently plead bank fraud. The elements of bank fraud are (1) that the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution, (2) that the defendant did so with the intent to defraud, and (3) that the financial institution was then-insured by the FDIC (or otherwise qualifies as a financial institution under 18 U.S.C. § 20). *See Brandon*, 298 F.3d at 311. Defendant argues that Counts 2-3 fail to allege adequately (1) her execution of a scheme to defraud a financial institution and (2) her intent to defraud in carrying out such a scheme. Again, however, Counts 2-3 properly track the language of the relevant criminal statute, 18 U.S.C. § 1344, in laying out the execution and intent elements of bank fraud. First, the indictment sufficiently pleads the execution element. It alleges that the defendants "knowingly and intentionally execute[d], and attempt[ed] to execute, a scheme to defraud" covered financial institutions, (Indict., Count 2-3 ¶ 1), and makes clear that this scheme was executed by the defendant "knowingly submit[ting] and caus[ing] to be submitted mortgage loan applications containing materially false and fraudulent

statements for loans" on certain identified properties and to certain identified financial institution lenders (*id.* ¶ 3). Through incorporation by reference, Counts 2-3 allege that this scheme was executed by the manners and means and overt acts alleged earlier in the indictment, including Defendant Tsoa's processing of loan applications containing false statements about the applicants' employment, incomes, intent to occupy the residences, and lack of other real estate owned by them. (*Id.* ¶ 2; *see* Indict., Count 1 ¶¶ 10-12, 14-21.)

Second, the indictment sufficiently pleads the intent element. It properly states the essential element of intent by alleging that Defendant executed, or attempted to execute, a scheme to defraud a financial institution "knowingly and intentionally." (*Id.* ¶ 7.) *See United States v. Pupo*, 841 F.3d 1235, 1238-39 (4th. Cir. 1988) (requiring that where "willfulness or knowledge is made an element of the crime . . . [t]he charge must either include these terms, or words of similar import") (quoting *Finn v. United States*, 256 F.2d 304, 306 (4th Cir. 1958)). In addition, the allegations in the manner and means section, in particular the allegations that the defendants created or caused to be created fake verification documents to corroborate the false statements in the loan applications that Defendant Tsoa processed, support the indictment's assertion that Defendant possessed the intent to

7

defraud a financial institution through her execution of the scheme. (Indict., Counts 2-3 ¶ 2 (incorporating *id.*, Count 1 ¶¶ 9-13.) *See Brandon*, 298 F.3d at 311-13. Defendant also is wrong in insisting that the indictment must make clear whether the Government will be pursuing an actual knowledge or willful blindness theory of intent. It is not necessary for the Government to plead "the manner in which it will prove the charges or preview its evidence of legal theory" in order for the indictment to be legally sufficient. *United States v. Taylor*, CRIM.A. 3:04CR227, 2005 WL 2298170, at *4 (E.D. Va. Sept. 21, 2005)

In summary, by describing the alleged scheme to commit bank fraud, the various defendants' roles in that scheme (including Defendant Mikail's role as a recruiter of straw borrowers and Defendant Tsoa's role as a loan officer processing the fraudulent loan applications), Defendant's intent in carrying out the scheme, and the alleged acts of bank fraud that occurred (as detailed in the Overt Acts section), Counts 2-3 adequately provide Defendant with notice of the charges against her. *See Cuong Gia Le*, 310 F. Supp. 2d at 774. The counts therefore are legally sufficient.

  B. <u>Motion for a Bill of Particulars</u>

As an alternative to the dismissal of the counts against her, Defendant requests the Court direct the Government

to file a Bill of Particulars providing detailed facts about her involvement in the conspiracy and certain overt acts committed by her in furtherance of the conspiracy.

Pursuant to Federal Rule of Criminal Procedure 7(f), the Court may direct the Government to file a bill of particulars. Fed. R. Crim. P. 7(f). The decision whether to grant or deny a motion for a bill of particulars is within the sound discretion of the trial court. *United States v. Anderson*, 481 F.2d 685, 690 (4th Cir. 1973).

The purpose of a bill of particulars is "to enable a defendant to obtain sufficient information on the nature of the charge against him so that he may prepare for trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction in bar of another prosecution for the same offense." *United States v. Schembari*, 484 F.2d 931, 934-935 (4th Cir. 1973) (citing *United States v. Dulin*, 410 F.2d 363, 364 (4th Cir. 1969)). It "is not to be used to provide detailed disclosure of the government's evidence in advance of trial." *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985) (citing *Anderson,* 481 F.2d at 690). Instead, a bill of particulars "merely amplifies the indictment by providing missing or additional information so that the defendant can effectively prepare for trial." *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996) (citations omitted). A

court "must not direct the government to reveal the details of its evidence or the precise manner in which it will make its proof in a bill of particulars." *Cuong Gia Le*, 310 F. Supp. 2d at 781. If "the indictment adequately details the charges, or the information requested is otherwise available, then no bill of particulars is required." *United States v. Esquivel*, 755 F. Supp. 434, 436 (D.D.C. 1990) (citation omitted).

In light of these principles, the Court concludes that Defendant's motion must be denied because a bill of particulars is not warranted here. First, some of the information that Defendant seeks is beyond the proper scope of what a bill of particulars is designed to provide. As each count of the indictment applicable to Defendant "states the nature of the charge, the defendants who have been charged, and the date(s) and location of the alleged offense," these counts sufficiently apprise Defendant of the charges against her such that she can prepare for trial effectively. *Cuong Gia Le*, 301 F. Supp. 2d at 781. It is not necessary for the Government to provide the specific detailed facts requested by Defendant, such as how she recruited straw buyers or caused individuals to submit materially false information, as "there is no requirement that the Government allege the particulars regarding Defendant's involvement with the conspiracy, including the 'whens,'

10

'wheres,' and 'with whoms' of acts and participation in the charged conspiracy."  *Taylor*, 2005 WL 2298170, at *4.

Second, in determining whether to grant a bill of particulars, a court also may consider whether the requested information has been or will be "provided by other means, such as pretrial discovery, voluntary disclosure by the government, or the indictment itself."  *Id.*  To begin, the Government represents in its opposition that Defendant is receiving additional information about the alleged offenses through ongoing formal discovery, and indeed there has been voluminous discovery produced thus far.  (Gov't Opp. to Mot. for a Bill of Particulars at 4-5.)  A defendant is not entitled "to an unnecessary bill of particulars, where the underlying objectives of a Fed. R. Crim. P. 7 motion are fully satisfied by informal and formal discovery."  *Taylor*, 2005 WL 2298170, at *4; *see United States v. Society of Independent Gasoline Marketers of America*, 624 F.2d 461, 466 (4th Cir. 1980) (finding denial of bill of particulars not improper in light of discovery provided by the government); *Cuong Gia Le*, 301 F. Supp. 2d at 781 (finding a bill of particulars unwarranted where the government had provided and would continue to provide the facts and circumstances of the offense through ongoing discovery).

In addition, some of the information that Defendant seeks already is in the indictment.  Unlike in the case to which

11

Defendant points, *United States v. Sampson*, 448 F. Supp. 2d 692, 696 (E.D. Va. 2006), the Court notes that the indictment in this case already identifies "the dates of the fraudulent conduct, the specific fraudulent documents, and the fraudulent statements within the documents." For example, the indictment alleges that Defendant caused fraudulent mortgage loan applications to be submitted by her processing of these loans through First Empire Mortgage and Lifetime Financial Services in her position as a loan officer at these entities; identifies the false statements on the loan applications as included statements about the borrowers' employment, income, and intent to occupy the premises as primary residences, and material omissions about other real estate owned by the borrowers; and lists the specific fraudulent mortgage loan applications with which Defendant allegedly was involved. (*See* Indict., Count 1 ¶¶ 2, 10-12, 14-21.)

As it appears that Defendant is apprised sufficiently of the facts and circumstances of the offenses and that Defendant's motion is in essence an improper attempt to acquire specific details of the Government's evidence and the manner in which it will make its proof at trial, the Court will deny Defendant's Motion for a Bill of Particulars.

    C.    <u>Discovery Motion</u>

Defendant seeks six modifications to the Government's original proposed discovery order, arguing that the Court should

(1) change the word "may" to "could" in paragraphs 1, 2, and 4 in that order; (2) advance the expert disclosures to 20 days before trial; (3) limit Defendant's disclosure obligations to items in her possession, custody, or control; (4) advance the Rule 404(b) notice to 30 days before trial; (5) incorporate the *Giglio* disclosure requirement into the discovery order's *Brady* provision; and (6) advance the Jencks Act disclosures to 30 days before trial.  The Government responds that its original proposed discovery order is its standard discovery order that was drafted in negotiation with the Office of Federal Public Defender.  Nonetheless, the Government consents to the first and third modifications, as well as the second modification provided that this modified deadline applies to both sides.  (*See* Gov't Discovery Opp. at 2-3; Def. Discovery Reply at 2.)  Accordingly, the Court will grant those requested modifications.  The Government, however, objects to the remaining modifications.  The Court will address each in turn.

    1. <u>Timing of Rule 404(b) Evidence</u>

  Defendant argues that Rule 404(b)[2] evidence about the accused or a prosecution witness should be produced no later

---

[2] Rule 404(b) states: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial

than one month before trial, rather than the current seven calendar days provided in the Government's proposed order. Defendant argues that 404(b) evidence can prompt the need to go to a courthouse to determine whether a valid conviction was obtained and can require investigation for the location of witnesses. Defendant also points out that Rule 404(b) allows Defendant to file a motion in *limine* to exclude 404(b) and that the defense needs adequate time to prepare. (Def. Discovery Mot. at 5-6.) The Government argues simply that seven days is an adequate amount of time to investigate other crimes evidence and to draft a motion. (Gov't Discovery Opp. at 4.)

Defendant has not made a sufficient showing as to why production 30 days before trial is necessary. Nonetheless, the Court concludes that it would be appropriate to expand the standard discovery order's provision of seven days before trial to fourteen days instead, in order to better comply with Rule 404(b)'s requirement of "reasonable notice in advance of trial." Accordingly, the Court will deny in part and grant in part this proposed modification.

        2.    <u>Incorporation of *Giglio* material into *Brady* disclosure provision</u>

Defendant next argues that the standard discovery order "erroneously treats *Giglio* [materials] as Jencks" Act

---

notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

14

materials and "takes the position that witness statements are exempt from disclosure by virtue of the Jencks Act." (Def. Discovery Mot. at 6-7.) Accordingly, Defendant requests that the Court expressly incorporate *Giglio* material into the standard discovery order's provision requiring prompt production of *Brady* material. (*Id.* at 8.) The Government responds with two arguments. First, the Government asserts that Defendant misconstrues the discovery order. It contends that under the order and consistent with the law, if the Government interviews an individual and he or she provides exculpatory material, the Government has an obligation under *Brady* to disclose that information to Defendant promptly, regardless of whether the Government opts to call that individual as a witness at trial. Second, the Government argues that the requirement to produce *Giglio* material cannot be incorporated into the provision requiring prompt disclosure of *Brady* exculpatory material, because the obligation to provide *Giglio* materials -- like the obligation to produce Jencks Act materials -- cannot arise until some date close to or at trial when the Government has ascertained its witnesses for its case-in-chief and has disclosed its witness list. (Gov't Discovery Opp. at 4-5.)

The Court concludes that the standard discovery order's provisions addressing the production of *Brady* exculpatory materials and *Giglio* impeachment materials comply

15

with the law. Defendant is correct in noting that "*Giglio* material is simply a subset of *Brady* material." *United States v. Noel*, CRIM 3:08CR186-03, 2009 WL 2767650, at *2 (E.D. Va. Aug. 24, 2009) *aff'd sub nom. United States v. Peters*, 392 F. App'x 161 (4th Cir. 2010) (citing *United States v. Beckford*, 962 F. Supp. 780, 786 (E.D. Va. 1997) and *United States v. Bagley*, 473 U.S. 667, 676 (1985)). However, the Fourth Circuit has not established a specific timeline for these disclosures, but rather held that "there is no violation of a defendant's right to due process so long as the government discloses exculpatory and impeachment evidence to a defendant 'in time for its effective use at trial.'" *United States v. McCall*, 2013 WL 2382306 at * 2-3 (E.D. N.C. May 30, 2013) (quoting *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985)); *see also Beckford*, 962 F. Supp. at 788.

The Court finds that, in its current form, the standard discovery order provides for such disclosure. *Brady* materials primarily consists of two categories of evidence: "(1) exculpatory evidence, which goes to the heart of the defendant's guilt or innocence" and "(2) impeachment evidence, which may affect the jury's assessment of the credibility of a prosecution witness" (*i.e.*, *Giglio* material). *Beckford*, 962 F. Supp. at 787-88. The standard discovery order provides that the Government will produce the first category of *Brady* materials,

exculpatory evidence, promptly and that the Government will produce the second category of *Brady* materials, *Giglio* impeachment evidence, no later than 5 calendar days before trial. Courts in this district have found that a similar distinction in the timing of production of the two types of *Brady* material is reasonable. *Beckford*, 962 F. Supp. at 787-89; *see also United States v. Herndon*, 3:10CR170-9-HEH, 2010 WL 3385144, at *1 (E.D. Va. Aug. 20, 2010); *United States v. Le*, 306 F. Supp. 2d 589, 592 n.5 (E.D. Va. 2004). Requiring prompt disclosure of exculpatory evidence while allowing for disclosure of "pure impeachment material" only a few days before trial is proper because "exculpatory evidence may require significant pre-trial investigation in order to be useful to the defendant at trial" whereas "while Giglio material may have considerable impeachment value, the nature of that material usually does not require substantial advance time to prepare for its effective use at trial." *Beckford*, 962 F. Supp. at 787-89. Where material is both exculpatory *and* impeachment evidence, the standard discovery order's provision for the prompt production of exculpatory evidence controls. *Id.* at 789. In its opposition brief and at the June 21, 2013 hearing on this motion, the Government acknowledged this reading of the discovery order. (Dkt. 57; *see* Gov't Opp. at 4-5.) As the standard discovery order provides for appropriate production of

exculpatory and impeachment materials, the Court will deny Defendant's requested modification.

### 3. Timing of Jencks Act Materials

Finally, Defendant argues that Jencks Act materials should be produced at least one month before trial rather than the five calendar days provided by the standard discovery order, asserting that more time is necessary to fairly review and investigate the issues that may arise from such materials. (Def. Discovery Mot. at 8-9.)

As the Government correctly points out, the Jencks Act, 18 U.S.C. § 3500(a), states that the material should be provided after the witness testifies on direct examination at trial. It states:

> no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

*Id.* Accordingly, the Fourth Circuit has held that "district court may not require the government to produce Jencks Act material relating to one of its witnesses until after the witness has testified." *United States v. Lewis*, 35 F.3d 148, 151 (4th Cir. 1994). Of course, "nothing in the Jencks Act prevents the government from voluntarily disclosing covered material prior to trial," as it has agreed to do here, and the

Fourth Circuit "prefer[s] to encourage such early disclosure." This, however, does not mean that this Court necessarily should force the Government to provide the Jencks Act materials as early as Defendant requests here. Instead, the Court finds that a more modest adjustment of the current production schedule from five calendar days prior to trial to fourteen calendar days is appropriate. As a result, the Court will deny in part and grant in part Defendant's requested modification. In addition, the Court notes that given this adjustment of the deadline to produce Jencks Act materials, the Court also will adjust in the same manner the deadline to produce *Giglio* materials, changing the schedule for production of such material from five calendar days prior to trial to fourteen calendar days.

### III.  Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss, deny Defendant's Motion for a Bill of Particulars, and grant in part and deny in part Defendant's Discovery Motion.

|  | /s/ |
|---|---|
| June 25, 2013 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |