IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:13cr137 (JCC) |
| | ) | |
| GING-HWANG TSOA, | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter came before the Court on November 8, 2013, for oral argument on the Government's Motion in Limine to Permit Summary Exhibits, [Dkt. 112], Motion in Limine to Exclude Expert Testimony of Dr. Ronald Boggio, [Dkt. 110], and Motion in Limine to Exclude Expert Testimony of Stephen McGurl, [Dkt. 109].  The Court also addressed Defendant Ging-Hwang Tsoa's ("Defendant") Motion to Dismiss for Pre-Indictment Delay, [Dkt. 104].  At the conclusion of the hearing, the Court denied Defendant's Motion to Dismiss, deferred ruling on the Government's Motion to Permit Summary Exhibits, granted the Government's Motion to Exclude Expert Testimony of Dr. Ronald Boggio, and granted in part and denied in part the Government's Motion to Exclude Expert Testimony of Stephen McGurl.  This memorandum is intended to memorialize and explain further the rationale underlying these rulings.

1

## I.  Background

The basic facts of this case are recounted in the Court's Memorandum Opinion dated October 29, 2013, [Dkt. 105], familiarity with which is presumed.  In brief, Defendant is charged with one count of conspiracy to commit bank fraud and two counts of bank fraud.  (Indictment, Counts 1-3.)  The Government alleges that Defendant helped Robert Mikail ("Mikail") submit mortgage loan applications containing materially false information to various lenders as part of a mortgage fraud conspiracy.  (Indictment, Count 1 ¶¶ 7-13.)

Each motion is discussed below.

## II.  Analysis

A.  <u>Motion to Dismiss for Pre-Indictment Delay</u>

Analysis properly begins with Defendant's Motion to Dismiss for Pre-Indictment Delay since resolution of this issue could have dispositive consequences.

The primary protection against pre-indictment delay is the statute of limitations.  *United States v. Marion*, 404 U.S. 307, 322 (1971).  "Such statutes represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice; they are made for the repose of society and the protection of those who may (during the limitation) . . . have lost their means of defence."  *Id*. (citation and internal quotation marks omitted).  Nevertheless,

even when a charge is brought within the applicable limitations period, the Fifth Amendment requires dismissal where it is shown that the prosecution's pre-indictment delay substantially prejudiced the defendant's right to a fair trial. *United States v. Garcia*, 432 F. App'x 248, 250 (4th Cir. 2011) (citations omitted).

The Fourth Circuit employs a two-part test for determining whether pre-indictment delay warrants dismissal. *United States v. McCoy*, 129 F. App'x 815, 819 (4th Cir. 2005). "First, the defendant must show that he has suffered 'actual prejudice' from the pre-indictment delay." *Id.* at 819 (citation omitted). "Prejudice is demonstrated when the defendant has been 'meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected.'" *Id.* (citation omitted). The Fourth Circuit has emphasized that the burden to show actual prejudice is heavy. *Jones v. Angelone*, 94 F.3d 900, 907-08 (4th Cir. 1996).

Second, if actual prejudice is shown, the court must balance the demonstrated prejudice against the government's purported need for the delay. *Howell v. Baker*, 904 F.2d 889, 895 (4th Cir. 1990). The basic inquiry then becomes whether the government's action in prosecuting after substantial delay violates "fundamental concepts of justice" or "the community's

3

sense of fair play and decency." *United States v. Lovasco*, 431 U.S. 783, 790 (1977).

In this case, it is undisputed that the Government brought these charges within the applicable limitations period. (Def.'s Mot. Dismiss Pre-Indictment Delay (as paginated by CM/ECF) at 1-2.)  Nevertheless, there was a substantial delay between the alleged crimes and the indictment.  By all accounts, the criminal conduct occurred in 2006, while the indictment arose nearly seven years later.  (*Id.*)  Though clearly not ideal, Defendant is unable to establish that this delay requires dismissal.

Defendant advances three claims of prejudice due to the delay: (1) the death of a witness who "would have testified that [Defendant] often could not understand advice or instructions given to her in relation to the processing of loans"; (2) many witness who could attest to her ability as a loan officer and her English skills have "now forgotten" about her; and (3) many "key witnesses" mentioned in the discovery provided by the Government cannot be found.  (Def.'s Mot. Dismiss Pre-Indictment Delay at 3.)  As explained below, these assertions do not rise to the level of actual prejudice.

First, when claiming prejudice on account of a deceased witness, as is the case here, the defendant must do more than allege that the witness would have been beneficial.

4

*United States v. Sample*, 565 F. Supp. 1166, 1175 (E.D. Va. 1983).  "Defendant is required 'to demonstrate the general content of the lost evidence and show that it had a material connection with his defense to the crimes charged.'"  *Id*. (citation omitted).  Establishing prejudice on account of an unavailable witness is challenging because of the "difficulty . . . establishing the general content and materiality of the dead witness' lost testimony.  This is true because in most cases 'no one knows what [the witness] would have testified had he lived and been called to the stand . . . .'"  *Sample*, 565 F. Supp. at 1175 (citation omitted).

Defendant has provided no basis for the Court to believe that the deceased witness, if he or she were alive, would testify to what the Defendant believes.  And, "even when a defendant is able, through defendant's own testimony, to describe the general content of what a dead witness would have testified and its materiality, the defendant's incentive to emphasize, perhaps over-emphasize, the importance of the dead witness cannot be overlooked."  *Id*.  Defendant's claim of prejudice by this witness's absence appears purely speculative.  *See United States v. Lynch*, No. 94-5350, 1995 WL 325670, at *4 (4th Cir. June 1, 1995) (concluding that actual prejudice cannot be proven through speculative or conclusory assertions of prejudice).

Defendant's claim that she has suffered prejudice on account of memory loss by her former co-workers is similarly unpersuasive.  (Def.'s Mot. Dismiss Pre-Indictment Delay at 3.) It is well settled that generalized claims of memory loss, such as those asserted here, are insufficient.  *See Lynch*, 1995 WL 325670, at *4 ("Actual prejudice cannot be proven through generalized claims of memory loss." (citation omitted)).  In any event, information regarding Defendant's knowledge of her job and English abilities, which is the testimony Defendant contends these witnesses would have offered, should be available from other sources.  *See Jones v. Angelone*, 94 F.3d 900, 908 (4th Cir. 1996) ("When the claimed prejudice is the unavailability of witnesses . . . [the defendant must] show that the information the witness would have provided was not available from other sources.").

Defendant's final generalized claim that "key witnesses cannot be found" likewise adds little to her case. *Jones*, 94 F.3d at 909 ("Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice stemming from preindictment delay." (citation and internal quotation marks omitted)).

Finally, even assuming the veracity of Defendant's assertions, her burden remains unfulfilled because nothing

6

suggests that she "was meaningfully impaired in [her] ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected." *Jones*, 94 F.3d at 907; *see also United States v. Bartlett*, 794 F.2d 1285, 1290 (8th Cir. 1986) ("[D]efendant must demonstrate that the prejudice actually impaired his ability to meaningfully present a defense."). In other words, Defendant has not, as required, shown that "the result of the proceeding would [be] different" if these witnesses were available. *Jones*, 94 F.3d at 907.

While Defendant's inability to establish the requisite prejudice is itself prohibitive, she has also failed to satisfy the second requirement that, balancing the prejudice against the Government's reasons for the delay, the delay "violate[d] fundamental conceptions of justice or the community's sense of fair play and decency." *Howell*, 904 F.2d at 895. There is nothing unusual about the multi-year break in this case considering the investigation involved numerous properties and individuals. Moreover, the facts do not evidence that the Government's delay was in bad faith or used to gain a tactical advantage. *See United States v. Garcia*, 432 F. App'x 248, 250 (4th Cir. 2011) ("The Fifth Amendment requires dismissal of an indictment where it is shown at trial that . . . the delay was

an intentional device to gain tactical advantage over the accused." (citation and internal quotation marks omitted)).

Finding that Defendant has not met her burden under either prong of the Fourth Circuit's test, her motion must be denied. *See United States v. Beason*, 128 F. App'x 974, 975 (4th Cir. 2005).

B.   Motion in Limine to Permit Summary Exhibits

The Government has moved to for an order establishing the admissibility of a summary exhibit that purports to summarize nine mortgage transactions. (Gov't's Mot. in Limine for Summary Exs. at 2.)  All nine of the transactions serve as overt acts of the conspiracy count, and two of the transactions serve as the basis for the substantive bank fraud counts. (*Id.*) According to the Government, the exhibit provides information taken directly from loan applications and other documents executed at closing. (*Id.*)  The Government contends that the proposed exhibit will "enable the jury to review on one page information relevant to the charges in the indictment that would otherwise require detailed review of nearly thirty exhibits and many multiples of that in terms of numbers of pages." (*Id.*)

The admission of charts or summaries is expressly permitted under Federal Rule of Evidence 1006, which provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be

> presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

Fed. R. Evid. 1006.

The Fourth Circuit has set forth the following guidelines governing the use of charts and summaries at trial:

> Summary charts are admissible if they aid the jury in ascertaining the truth. The complexity and length of the case as well as the numbers of witnesses and exhibits are considered in making that determination. While the potential prejudice to a defendant must be considered, prejudice may be dispelled by giving the defendant an opportunity to cross-examine the individual who prepared the chart. In addition, a cautionary jury instruction may be requested and given.

*United States v. Loayza,* 107 F.3d 257, 264 (4th Cir. 1997). "The purpose of this Rule is to reduce the volume of written documents that are introduced into evidence by allowing in evidence accurate derivatives from the voluminous documents." *United States v. Janati,* 374 F.3d 263, 272 (4th Cir. 2004). Thus, under Rule 1006, the summary chart itself may come into evidence provided it is "an *accurate* compilation of the voluminous records sought to be summarized" and the underlying records are "otherwise . . . admissible in evidence." *Id.*

9

Succinctly stated, the following elements must be satisfied to permit admission under Rule 1006: (1) the summarized material must be "voluminous" and not conveniently subject to examination in court; (2) the summary or chart must be an accurate compilation of the voluminous records; (3) the records summarized must be otherwise admissible into evidence; and (4) the underlying documents must be made available to the opposing party for examination and copying. *See generally Janati,* 374 F.3d at 272; *Loayza,* 107 F.3d at 264.

Defendant disputes whether the Government has satisfied elements (1)-(3) in this case. (Def.'s Opp'n to Mot. in Limine for Summary Exs. at 1.)

1.   Volume of Underlying Records

Defendant first contends that the summarized records are not sufficiently voluminous to permit a summary chart. (*Id.* at 3.) Defendant notes that the information contained on the chart is drawn from a handful of settlement statements and loan applications that total less than 100 pages. (*Id.*) Defendant points to several cases that have declined to admit summary exhibits with this volume of documents. (*Id.* (citing *United States v. Carr*, 965 F.2d 408, 412 (7th Cir. 1992) (holding that a transcript under eighty pages was not voluminous)).)

Defendant's singular focus on the number of underlying documents misses a key component of this Court's analysis under

10

Rule 1006. "The complexity and length of the case as well as the number[] of witnesses and exhibits [is also] considered" in determining whether summary evidence is appropriate. *Loayza,* 107 F.3d at 264. There is no hard fast rule and it is within this Court's discretion to allow summary evidence. *See United States v. Blackwell*, 436 F. App'x 192, 199 (4th Cir. 2011).

It is unchallenged that presentation of the evidence contained in the Government's proposed chart would require several exhibits and numerous pages of complex mortgage documents not often viewed by laypersons. Indeed, Defendant has repeatedly emphasized the complexity of the mortgage documents at issue in this case. (Def.'s Second Mot. to Continue Trial Date [Dkt. 71] at 9.) Thus, while the volume of material is not overwhelming, the evidence is certainly complex. Moreover, courts dealing with similar mortgage fraud cases have permitted summary exhibits to aid the jury in parsing through the evidence. *See United States v. Appolon*, 715 F.3d 362, 374 (1st Cir. 2013) (upholding district court's decision to admit summary testimony in mortgage fraud case).

Accordingly, the Court has little trouble concluding that the summarized material in this case is "voluminous" within the meaning of Rule 1006.

2.   Accuracy

Defendant next argues that the Government's chart is argumentative because it "over simplifies the various underlying documents" and leaves out "critical information." (Def.'s Opp'n to Mot. in Limine for Summary Exs. at 7-8.)  The Fourth Circuit has interpreted similar claims as an attack on the accuracy of the disputed compilation.  *See United States v. Blackwell*, 436 F. App'x 192, 199 (4th Cir. 2011).

Defendant's position is unavailing.  Her contention that the chart is inadmissible because it omits information she deems relevant would circumvent the very purpose of Rule 1006, which is to provide a *summary*.  To the extent Defendant believes the chart is missing pertinent material, she can address this issue on cross-examination or provide a summary chart of her own.  *See Blackwell*, 436 F. App'x at 199.

Furthermore, contrary to Defendant's assertion, the Government's submission is not suggestive.  The chart is composed of objective facts organized in a coherent manner. While Defendant may not like the information conveyed, that does not render the summary improper.  *Id.*

3.   Admissibility

Lastly, Defendant argues that the chart is improper because it is comprised of inadmissible hearsay not subject to

any exception.  (Def.'s Opp'n to Mot. in Limine for Summary Exs. at 3.)

Materials summarized by Rule 1006 must themselves be admissible because a contrary rule "would inappropriately provide litigants with a means of avoiding rules governing the admission of evidence such as hearsay." *United States v. Irvin*, 682 F.3d 1254, 1262 (10th Cir. 2012) (citation omitted). Accordingly, just as the proponent of hearsay evidence bears the burden of establishing the applicability of a hearsay exception, so too must the proponent of a Rule 1006 summary based on hearsay evidence establish that the materials summarized are admissible.  *Id.*

The Government's proposed chart is comprised of mortgage documents from Horizon Title, the title company that performed many of the closings on the properties at issue.  It is uncontested that these documents are hearsay.  (Gov't's Mot. in Limine for Summary Exs. at 2.)  Accordingly, to be admissible, these records must fall under some exception to the hearsay rule.  *See United States v. Laguerre*, 146 F. App'x 595, 597 (4th Cir. 2005).  To avoid this pitfall, the Government contends that the underlying documents are business records exempt from the hearsay exclusion pursuant to Rule 803(6). (Gov't's Mot. in Limine for Summary Exs. at 2.)

While it appears likely that the business records exception applies in this instance, the Government has yet to provide a Rule 902(11) certificate for this evidence or otherwise certify its admissibility. *See United States v. Saunders*, Criminal Action No. 12-141, 2013 WL 2903071, at *1 (E.D. La. June 13, 2013) (noting that a party seeking to use Rule 1006 to summarize business records must satisfy all the foundational evidentiary requirements of Rules 803(6) and 902(11)). Accordingly, the Court will withhold any ruling on this motion because the Government has not provided sufficient information to establish the admissibility of the underlying documents. *See Janati*, 374 F.3d at 273 (noting that the district court properly withheld ruling on the admissibility of summary charts until trial).

C. <u>Motion in Limine to Exclude Expert Testimony of Dr. Ronald Boggio</u>

On October 23, 2013, Defendant provided notice that she intends to call Dr. Ronald Boggio, a clinical psychologist, as an expert in her case. (Gov't's Mot. in Limine to Exclude Dr. Boggio at 1.) According to Defendant's notice, she intends to qualify Dr. Boggio as an expert in the area of clinical psychology and elicit from him the following opinions:

> Opinion 1: Felicia Tsoa's verbal comprehension abilities in English and in Chinese are significantly inferior to her non-verbal abilities, and the difference

14

between her verbal and non-verbal abilities is clinically and statistically significant.

Opinion 2: Felicia Tsoa's verbal memory is significantly inferior to her non-verbal memory, and the difference between her verbal and non-verbal memory is clinically and statistically significant.

Opinion 3: Felicia Tsoa has a third grade reading level, which is considerably below the reading level typically required for daily adult living skills in the U.S.

Opinion 4: Felicia Tsoa's thinking is characterized by disorganization, impaired attention and concentration, and circumstantial and tangential thought-flow. These characteristics are not language-dependent.

Opinion 5: As a result of the above-described impairments, Felicia Tsoa is severely limited in her ability to navigate the world in English, such as: understanding and processing verbal information, learning new information verbally, and communicating her thoughts in an effective, comprehensible manner.

Opinion 6: Dr. Boggio will provide general psychological testimony concerning depression, its causes and symptoms, and its effects on intelligence, memory, and thought processing.

(Def.'s Disclosure of Dr. Ronald Boggio at 2-4.)  Dr. Boggio

will also testify about the tests administered to Defendant and

her performance on them and explain to the jury various

psychological terms and concepts, including disorganized

thinking, impaired attention and concentration, circumstantial

thought flow, and tangential thought flow.  (*Id*. at 5.)

15

The Government seeks exclude this testimony on grounds that these opinions amount to an impermissible incapacity defense.  (Gov't's Mot. in Limine to Exclude Dr. Boggio at 2-6.)  According to the Government, "[p]sychological evidence relating to a defendant's mental condition, short of insanity, is rarely if ever admissible in a federal criminal trial." (*Id.* at 3.)  The Government also notes that nothing in Dr. Boggio's training and experience suggests that he is qualified to opine on an individual's ability to understand and speak the English language.  (*Id.* at 5.)

Defendant, in turn, argues that such evidence is relevant to the issue of intent.  (Def.'s Consolidated Opp'n at 2-4.)  It is undisputed that the Government has charged her with a specific intent crime; thus, concludes Defendant, the expert testimony from Dr. Boggio regarding her mental capacity and English skills is probative of her ability to form the requisite *mens rea*.  (*Id.*)  Defendant specifically notes that she is not offering Dr. Boggio's testimony as a diminished capacity defense, which she agrees is impermissible.  (*Id.* at 4-6.)

1.  <u>Standards for Admitting Expert Mental Disease Evidence</u>

It is now well settled that a defendant may present expert testimony regarding his or her mental condition short of establishing insanity if the evidence is relevant to determining

16

the defendant's ability to form the requisite intent to commit the crime. *See United States v. Worrell*, 313 F.3d 867, 872-74 (4th Cir. 2002). In *Worrell*, the Fourth Circuit acknowledged that the Insanity Defense Reform Act ("IDRA") expressly prohibits the use of any "[m]ental disease or defect" as a defense unless it demonstrates that the defendant "was unable to appreciate the nature and quality or the wrongfulness of his acts." *Id.* at 872 (citing 18 U.S.C. § 17). The court concluded, however, that "IDRA does not prohibit psychiatric evidence of a mental condition short of insanity when such evidence is offered purely to rebut the government's evidence of specific intent, although such cases will be rare." *Id.* at 874. In other words, IDRA bars psychiatric evidence relating to a defendant's mental condition if such evidence is in the nature of a legal justification or excuse for otherwise criminal conduct, but permits this type of evidence if it negates an essential element of the government's case. *Id.* at 873-74.

Cases subsequent to *Worrell* have explained that psychiatric evidence introduced for purposes beyond proving the defense of insanity is rarely admissible. *See, e.g., United States v. Chance*, Criminal No. AW-10-0760, 2011 WL 5826675, at *8 (D. Md. Nov. 17, 2011); *see also Worrell,* 313 F.3d at 873 ("We confess we have difficulty envisioning many scenarios in which a defendant could introduce psychiatric evidence, short of

17

insanity, that was not simply diminished capacity evidence or some other form of justification in disguise.").

Provided that psychiatric testimony is permissible only in very narrow circumstances, district courts must "examine such psychiatric evidence carefully to ascertain whether it would, if believed, 'support a legally acceptable theory of lack of *mens rea.'*" *United States v. Moran*, Nos. 90-5024, 90-5025, 1991 WL 125461, at *3 (4th Cir. July 12, 1991) (quoting *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990)). Careful review is essential since "psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury from focusing on the actual presence or absence of *mens rea,* and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification . . . ." *Cameron,* 907 F.2d at 1067 (citations omitted).

Nonetheless, even if expert testimony is relevant to establish a lack of intent, it will be admitted only if it also satisfies the requirements of Rules 403, 702, and 704 of the Federal Rules of Evidence. *See, e.g., United States v. Andrews*, 811 F. Supp. 2d 1158, 1171 (E.D. Pa. 2011).

Federal Rules of Evidence 702 and 704 govern the admissibility of expert testimony, and the district court serves as a gatekeeper in determining whether to admit such evidence.

*See United States v. Forrest,* 429 F.3d 73, 80 (4th Cir. 2005). A district court "has broad discretion to admit or exclude expert testimony, based upon whether it is helpful to the trier of fact." *United States v. Bennett,* 161 F.3d 171, 182 (3d Cir. 1998). Like all evidence, expert testimony must "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401, and may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," Fed. R. Evid. 403.

When relying on expert evidence, the defendant must demonstrate that the proffered expert would be helpful to the jury by commenting beyond what could be ascertained based on the testimony of laypeople. Expert testimony is properly excludable where persons of "common understanding" are "capable of comprehending the primary facts and of drawing correct conclusions from them." *United States v. Castillo,* 924 F.2d 1227, 1232 (2d Cir. 1991). Thus, district courts should not admit expert testimony that is directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help. For example, in *United States v. DiDomenico,* 985 F.2d 1159 (2d Cir. 1993), the Second Circuit ruled that the district court acted within its discretion by excluding expert

19

psychiatric testimony that the defendant suffered from "dependent personality disorder" because the defendant's own testimony about her mental state had "covered virtually the entire ground of [the expert's proffered] testimony." *Id.* at 1163.  Thus, the expert's testimony would have unnecessarily stamped the "imprimatur of a clinical label" on what is already a condition within the jury's experience.  *Id.* at 1164.

Moreover, when offering psychiatric evidence to negate *mens rea,* as is the case here, the defendant must demonstrate a genuine link between the proffered testimony and the issue of intent.  For this reason, courts have excluded expert mental disease testimony that was so general that it could not explain the effect a mental condition could have on a defendant's ability to form criminal intent.  *See United States v. Schneider,* 111 F.3d 197, 202 (1st Cir. 1997) (excluding expert testimony that defendant's chemical dependency and "major depression with probable mania" would have produced "impaired judgment"); *Cameron,* 907 F.2d at 1067 (noting that evidence of defendant's schizophrenia did not clarify how she did not intend to distribute crack cocaine).

Finally, even if some expert mental disease testimony is permitted, such experts are precluded from reaching a definite conclusion about what mental state a defendant actually possessed at the time of the offense.  While opinions which

embrace an ultimate issue to be decided by the trier of fact are generally "not objectionable," Fed. R. Evid. 704(a), expert testimony about the mental state or condition of a defendant in a criminal case is treated differently.  If an expert witness testifies regarding the mental state or condition of a defendant in a criminal case, that expert may not "state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto.  Such elements are for the trier of fact alone." Fed. R. Evid. 704(b).

      2.  <u>Expert Testimony in This Case</u>

      The charged offenses in this case unquestionably contain intent elements that are capable of being countered by expert mental disease testimony.  *See, e.g., United States v. Dupre*, 339 F. Supp. 2d 534, 539 (S.D.N.Y. 2004), *aff'd in part, vacated in part,* 462 F.3d 131, 137–38 (2d Cir. 2006).  However, applying the principles above, the Court agrees with the Government that Dr. Boggio's proffered testimony is inadmissible.

      The general focus of Dr. Boggio's report and disclosure is on Defendant's limited English skills and the variation between her verbal and non-verbal abilities and memory.  (Dr. Boggio's Forensic Psychological Evaluation at 4–8.)  Dr. Boggio concludes that Defendant has a third-grade

reading level and "disorganization in her thinking." [1]  (*Id.* at 7.)  Nevertheless, Dr. Biggio also notes that Defendant's "overall intelligence was in the High Average range" and she has an IQ in the 88th percentile.  (*Id.* at 4-6.)  His report additionally makes clear that Defendant does not suffer from depression, anxiety, or any other clinical disorder.  (*Id.* at 8.)

First, Dr. Boggio has failed to establish the necessary link between Defendant's alleged incapacity and the crimes charged.  "Evidence offered as psychiatric evidence to negate such specific intent is admissible . . . *when such evidence focuses on the defendant's specific state of mind at the time of the charged offense*."  *Cameron,* 907 F.2d at 1067 (emphasis added).  Dr. Boggio first evaluated Defendant in June 2013, a full seven years after her conduct that is the subject matter of this case.  While Defendant may now suffer from impaired English abilities, nothing indicates that Defendant suffered from any defect that would support the conclusion that she lacked, at the time of the offense, the specific intent to commit the crimes charges.  Accordingly, Dr. Boggio's proposed

---

[1]  Apart from Dr. Boggio's testimony regarding Defendant's intelligence, he proposes testifying about the general symptoms and effects of depression. Such testimony is clearly impermissible because, as evident from Dr. Boggio's own report, Defendant has not been diagnosed with depression.  *See, e.g., United States v. Hite*, 918 F. Supp. 2d 58, 72 (D.D.C. 2013).  Accordingly, for the reasons set forth in *Hite*, this testimony is excluded and will not be addressed below.

testimony is not nearly probative enough on the issue of
Defendant's mental condition at the time of the offense to
warrant consideration by a jury.  *See, e.g., United States v.
Griffin*, No. (S6) 94 CR. 631, 1996 WL 140073, at *10 (S.D.N.Y.
Mar. 27, 1996) ("Psychological evidence may be admissible to
determine whether the Government has carried its burden of proof
with respect to a specific intent crime . . . .  However, such
evidence is admissible only if the evidence focuses on the
defendant's specific state of mind at the time of the charged
offense. . . .  General claims that a defendant lacked the
capacity or was incapable of forming specific intent are not
admissible.").

        Moreover, courts in this circuit have found that
evidence of mild cognitive difficulties is generally
insufficient to find that a defendant lacked the requisite
criminal culpability to commit fraud.  *See United States v.
Zakaria*, Criminal No. WDQ-10-0043, 2010 WL 3895383, at *1 (D.
Md. Oct. 1, 2010) (citing *United States v. Lawson*, 459 F. Supp.
2d 1192, 1199 (M.D. Ala. 2006) (finding that "general
psychiatric evidence of [defendant's] low IQ or other cognitive
difficulties" was irrelevant to her mental state when conspiring
to steal)).

        Even assuming Dr. Boggio's proposed testimony is
probative of Defendant's assertion that she lacked the requisite

intent at the time of the alleged crimes, the Court finds this evidence impermissible.  Determining whether to admit this particular type of expert testimony can be challenging due to the vague line prior cases have drawn between barred mental defect evidence and permissible mental defect evidence advancing a "legitimate" *mens rea* theory.  Nonetheless, Rule 403 mandates that courts weigh the probative nature of this evidence against factors such as its capacity to mislead or confuse the jury, and to exclude evidence where the latter factors substantially outweigh its probative qualities.  On balance, the expert testimony proffered in this case demonstrates a substantial capacity to mislead the jury, while providing little additional helpful information.

        For instance, much of Dr. Boggio's report highlights Defendant's inability to properly understand the English language.  Such evidence, however, is highly speculative.  *See Andrews*, 811 F. Supp. 2d at 1174 (rejecting defendant's proposed expert testimony regarding her inability to understand certain documents because such testimony was "highly speculative in nature").

        Dr. Boggio's report also indicates that Defendant's cognitive performance is above average.  This significantly reduces any probative value the report could have on the question of whether she was incapable of understanding what

24

appears to be a straight forward case of fraud.  *Dupre,* 339 F. Supp. 2d at 544 (expert's acknowledgment that the defendant "has the capacity to perceive things realistically and exhibits cognitive flexibility," substantially reduced "the usefulness of the expert testimony" that defendant lacked the mental capacity to form the requisite intent).

Finally, Defendant's alleged inability to competently understand English can be easily developed through other sources and is well within the purview of the average juror.  *See DiDomenico*, 985 F.2d at 1163 (excluding expert where the proffered testimony was available through other sources, "not hard to assimilate and, . . . it addressed a subject matter within the experience of the jury"); *see also United States v. Esch*, 832 F.2d 531, 535 (10th Cir. 1987) (court refused to allow psychologist to testify that defendant had a "dependent personality" because such testimony did not meet the helpfulness criterion of Rule 702).  Allowing expert testimony on this subject would unnecessarily stamp the "imprimatur of a clinical label" on a condition that is within the jury's experience, and present an inherent danger that it would distract the jury from focusing on the actual presence or absence of *mens rea*. *DiDomenico*, 985 F.2d at 1163.

In sum, the proffered testimony causes great concern for its capacity to mislead and confuse the jury, and it does

not offer useful admissible evidence that Defendant may have been affected by her lack of English skills in connection with the alleged fraud.  Therefore, since its limited probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and its tendency to mislead the jury, the proffered expert testimony based on Dr. Boggio's evaluation is excluded.  *See United States v. Hayez*, 260 F. App'x 615, 619 (4th Cir. 2008) (upholding district court's determination that any probative value from defendant's proffered psychiatric testimony "was substantially outweighed by the likelihood that the jury would be confused by the ancillary issue[s] raised").

    D.   <u>Motion in Limine to Exclude Expert Testimony of Stephen McGurl</u>

Defendant has also provided notice that she intends to call Stephen McGurl as an expert in the mortgage banking industry.  (Def.'s Disclosure of Expert Testimony for Stephen M. McGurl at 1.)  In Defendant's expert disclosure, she states that Mr. McGurl will offer expert testimony based upon his education, training, and 29 years of experience in the mortgage banking industry, as well as his interview of Defendant.  (*Id.* at 1-2.) Specifically, Defendant expects to elicit the following opinions from Mr. McGurl:

> Opinion 1: Mr. McGurl will educate the jury about the duties, responsibilities, and day-to-day activities of a loan officer. Mr. McGurl will testify that the duties of a

loan officer generally may include: providing appropriate product recommendations to the customers per the credit policy guidelines of the organization, marketing and promoting mortgage programs, and providing appropriate mortgage loan recommendations to the borrowers.

Opinion 2: Mr. McGurl will educate the jury about the knowledge, skills, and core competencies that are necessary for a loan officer to be able to perform his or her job.

Opinion 3: Mr. McGurl will educate the jury regarding the areas of substantive knowledge and skills that must be taught to loan officers in order for them to provide competent services. Mr. McGurl will testify that loan officers must receive training in a broad range of topics, including: a new set of vocabulary and jargon specific to the mortgage lending industry, the ability to read and comprehend various state and federal forms and agreements that are used in a mortgage loan transaction, knowledge of the various steps in the mortgage loan cycle and how they relate to one another, knowledge and understanding of the fees involved in a mortgage loan, the types of mortgage loan programs that are available and appropriate for specific borrowers, the types of documentation that are required for each loan program, the ability to analyze a credit report, and knowledge and understanding of loan pricing.

Opinion 4: Mr. McGurl will testify that, based upon his interview and evaluation of the defendant, Ms. Tsoa displayed an overall poor understanding of the mortgage lending process. Mr. McGurl will testify that Ms. Tsoa often was unable to describe, or described erroneously, the purpose of various documents that are used or the different steps in the mortgage loan cycle.

27

>Opinion 5: Mr. McGurl will testify that the hiring standards for loan officers were significantly more lax in 2005 and 2006 compared to today. Mr. McGurl will testify that the overabundance of loan applicants and the shortage of loan originators during that timeframe created an environment in which loan officers are often hired without regard to their knowledge or skills in working with mortgage loans.

(*Id.* at 1-5.)

The Government raises several objections to this proffered testimony, each of which is addressed in turn below.

1.  Relevancy

The Government first argues that Opinions 1, 2, 3, and 5 should be excluded on relevancy grounds.  (Gov't's Mot. in Limine to Exclude Stephen McGurl at 3.)  According to the Government, these general opinions would not assist the jury in determining whether any fact at issue is more or less probable.  (*Id.*)

In response, Defendant claims that these opinions are highly relevant to her lack of intent defense.  (Def.'s Condensed Opp'n at 11-19.)  Defendant contends that this information will assist the jury in understanding the complexities of the job and how her actions were the result of ignorance.  (*Id.*)  Defendant also notes that this information will be used to rebut the Government's position that she did not follow proper protocols in executing the disputed loans.  (*Id.*)

28

Admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (a) the testimony is based upon sufficient facts or data, (b) the testimony is the product of reliable principles and methods, and (c) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Boiled down, Rule 702 requires that expert testimony be both reliable and relevant. *See United States v. Crisp*, 324 F.3d 261, 268 (4th Cir. 2003).

As the Supreme Court has stated, a district court must act as a "gatekeeper" to ensure that all expert testimony and evidence admitted at trial "both rests on reliable foundation and is relevant to the task at hand." *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). The second prong of this test, involving the assessment of whether the expert testimony or evidence is relevant, has been alternately described as a determination of "fit." The Court has explained that the expert testimony must be sufficiently linked to the facts of the case so that it will actually help the jury resolve a factual dispute. *Id.* at 591 (citing *United States v. Downing,*

753 F.2d 1224, 1242 (3d Cir. 1985)). In other words, expert testimony must be pertinent to the issues at trial. *Id.* at 597.

Like all evidence, expert testimony must "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401, and may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," Fed. R. Evid. 403. An explicit definition of "relevance" is found in Rule 401, which provides "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

The proponent of expert testimony has the burden of proving its admissibility under these standards by a preponderance of the evidence. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

Having considered the both parties' submissions, the Court agrees with Defendant that Opinions 1, 2, 3, and 5 are sufficiently relevant to her *mens rea* defense and other issues likely to be presented in this case.

It is apparent at this stage that Defendant is planning to contest the intent element of the Government's case.

30

To this end, Defendant is going to introduce evidence that she had trouble understanding English and lacked the intelligence to appreciate that her actions were fraudulent.  The disputed testimony above will undoubtedly assist the jury in understanding what was required of Defendant as a loan officer and whether her actions were the result of criminal intent or mistake.  This evidence also has relevance on account of the Government's likely position that Defendant's failure to follow proper protocol is indicative of criminal intent.  Such information will aid the jury in understanding Defendant's actions with regard to the alleged loans.  *See United States v. Queen,* 132 F.3d 991, 998 (4th Cir. 1997) (acknowledging that relevancy requires only a finding that the evidence be "worth consideration by the jury" or have a "plus value" to be admissible); *United States v. Okun*, Criminal No. 3:08-CR-132, 2009 WL 414009, at *6 (E.D. Va. Feb. 18, 2009) ("Relevance is intended to 'present[ ] a low barrier to admissibility,' as the evidence in question 'need only be worth consideration by the jury[.]'" (citation omitted)).

      2.  Opinion 4

      The remainder of the Government's motion focuses on Mr. McGurl's proffered testimony under Opinion 4.  (Gov't's Mot. in Limine to Exclude Stephen McGurl at 4-7.)  For ease of reference, Opinion 4 states as follows:

> Mr. McGurl will testify that, based upon his
> interview and evaluation of the defendant,
> Ms. Tsoa displayed an overall poor
> understanding of the mortgage lending
> process. Mr. McGurl will testify that Ms.
> Tsoa often was unable to describe, or
> described erroneously, the purpose of
> various documents that are used or the
> different steps in the mortgage loan cycle.

(Def.'s Disclosure of Expert Testimony for Stephen M. McGurl at 4-5.)  According to the Government, this testimony should be excluded because it is irrelevant, violates Rules 704(B), improperly introduces self-serving hearsay, and is unreliable. (Gov't's Mot. in Limine to Exclude Stephen McGurl at 4-7.)  The Government also claims that this testimony is inadmissible because the Defendant's expert disclosure is deficient.  (*Id.*)

Defendant, in turn, disputes each of these arguments and claims that this proffered testimony meets all of the requirements of Rule 702.  (Def.'s Condensed Opp'n at 11-19.)

The Court will not address all of the Government's arguments because it is apparent that this testimony is inherently unreliable and prohibited under Rule 403.  As noted above, district courts serve a "gatekeeping" function and must ensure that an expert's testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 597.  Rule 702 requires that expert testimony be based on sufficient facts and data, that it be the product of reliable principles and methods, and that the expert reliably applied

32

these principles and methods to the facts.  Fed. R. Evid. 702.
The proposed testimony must be based on "more than subjective
belief or unsupported speculation."  *Daubert,* 509 U.S. at 589–
90.

This inquiry is inherently flexible, and district
courts have broad latitude not only in making their ultimate
reliability conclusions but also in deciding how to make those
conclusions, *i.e.*, which factors to consider.  *Kumho Tire Co. v.
Carmichael,* 526 U.S. 137, 142 (1999).  Although the Supreme
Court in *Daubert* set forth a list of factors for the trial judge
to use in determining reliability, those factors are neither
mandatory nor exhaustive.  *Daubert,* 509 U.S. 592–94.  As
further explained in *Kumho*, the inquiry demanded by Rule 702 is
flexible and the decision as to what factors to employ must be
tied to the facts of that particular case.  526 U.S. at 150.

Considered under this rubric, the Court finds that the
opinions offered by Mr. McGurl under Opinion 4 are not
sufficiently reliable.  Mr. McGurl's conclusion is based solely
on his current interactions with Defendant and her self-
reporting.  Information of this type (*i.e.*, self-reporting) is
inherently unreliable.  *See Hare v. Opryland Hospitality, LLC*,
Civil Action No. DKC 09–0599, 2010 WL 3719915, at *5 (D. Md.
Sept. 17, 2010).  The reliability of any information produced by
Defendant is especially dubious given her knowledge of the

33

mortgage loan process is a key issue to her defense.  *See Davis
v. Old Dominion Tobacco Co., Inc.*, No. 2:09CV603, 2010 WL
8945996, at *3 (E.D. Va. Nov. 5, 2010) (finding expert opinion
based solely on plaintiff's self-reporting unreliable).

Regardless, even assuming reliability, the Court finds
this evidence inadmissible.  Rules 403 mandates that courts
weigh the probative nature of any evidence against factors such
as its capacity to mislead or confuse the jury, and to exclude
evidence where the latter factors substantially outweigh its
probative qualities.  *See* Fed. R. Evid. 403.  Such is the case
here.

The proffered testimony under Opinion 4 relates to
Defendant's current understanding of the mortgage process; yet,
it is undisputed that the crimes occurred several years earlier.
There is nothing in Mr. McGurl's report to tie Defendant's
current knowledge with the time of the offense.  As such, Mr.
McGurl's testimony under Opinion 4 is not nearly probative
enough to warrant consideration by a jury when balanced against
the danger that this testimony would distract the jury from
focusing on the relevant issue of Defendant's prior knowledge.

### III.   Conclusion

The Court's rulings of November 8, 2013, were

consistent with and based upon the foregoing analysis.


<table>
<tr><td></td><td>_____/s/_____</td></tr>
</table>

November 20, 2013                  James C. Cacheris
Alexandria, Virginia      UNITED STATES DISTRICT COURT JUDGE

35