FILED
DISTRICT COURT
FEB 2 1 2014
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA,      )
                               )
                               )
            v.                 )      1:13cr137 (JCC)
                               )
GING-HWANG TSOA,               )
                               )
            Defendant.         )

M E M O R A N D U M   O P I N I O N

On February 21, 2014, this matter came before the
Court on the sentencing of Defendant Ging-Hwang Tsoa
("Defendant" or "Tsoa").  On November 15, 2013, a jury found
Defendant guilty of one count of Conspiracy to Commit Bank
Fraud, in violation of 18 U.S.C. § 1349 and two counts of Bank
Fraud, in violation of 18 U.S.C. § 1344.  Pursuant to the United
States Sentencing Guidelines, U.S.S.G. § 1A1.1, *et seq.* (the
"Guidelines"), the United States Probation Office issued a pre-
sentence report (the "PSR"), calculating Defendant's range under
the Guidelines as 46 to 57 months.  [Dkts. 143, 157.]  The
Government filed its Position on Sentencing on January 30, 2014.
[Dkt. 155.]  Defendant filed her Position on Sentencing on
February 1, 2014.  [Dkt. 159.]

On February 6, 2014, this matter first came before the
Court for sentencing.  [Dkt. 163.]  At the sentencing hearing,
Defendant stated that there were certain facts she had just

1

remembered three days prior that she wanted to discuss with her attorney. The Court ordered counsel to file any additional objections to the facts in the PSR by February 11, 2014 and continued the sentencing to February 14, 2014. On February 10, 2014, Defendant filed her Supplement to Position on Sentencing. [Dkt. 165.] Subsequently, as a result of inclement weather, the sentencing was continued to February 21, 2014.

Defendant raises six objections or clarifications to the facts listed in the PSR. (PSR at A-1, A-2.) First, Defendant objects to the Offense Conduct and Victim Impact sections in their entirety and maintains that she is innocent of the charges for which she was found guilty. (PSR at A-1.) Second, Defendant objects to the various spellings of her name listed in the Alias section. Third, with regard to paragraph 26, Defendant argues that co-conspirator Cindy Wang ("Wang") was more culpable than she in the mortgage fraud conspiracy. Fourth, Defendant asserts with regard to paragraph 27, that not all straw buyers were unsophisticated or illiterate. Fifth, Defendant notes that she has very low verbal intelligence and verbal memory. Finally, Defendant notes that she "spent the first few years of her married life as a housewife." (PSR A-2.)

## I. Analysis

Sentences are imposed in accordance with 18 U.S.C. § 3553(a). The Guidelines calculations are just one factor the

2

Court takes into consideration when sentencing. *Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007). I understand that I am free to depart upwards or downwards from the guidelines range and to grant variances as *Gall* permits district courts to impose sentences both above and below the guideline recommendations. *See Gall*, 552 U.S. at 45. I also understand that, under *United States v. Nelson*, 555 U.S. 350, 352 (2009), a sentencing court may not presume that a sentence within the applicable Sentencing Guidelines range is presumptively reasonable.

Section 3553(a) of Title 18 lists several factors for the Court to consider in imposing a sentence. Relevant here, 18 U.S.C. § 3553(a) provides that "[t]he court, in determining the particular sentence to be imposed, shall consider . . . the nature and circumstances of the offense and the history and characteristics of the defendant." Section 3553(a) also provides that the court shall consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, provide restitution to the victim, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

A.   Objection to the Offense Conduct and Victim
     Impact Sections

The Sentencing Guidelines provide that "[i]n resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information . . . provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *United States v. Seay*, 553 F.3d 732, 741 (4th Cir. 2009); *see United States v. Tucker*, 404 U.S. 443, 446 (1972) ("[B]efore making [the sentencing] determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come."). Courts have held that a "PSR generally bears sufficient indicia of reliability to be considered as evidence by a sentencing judge when making factual determinations." *United States v. Rome*, 207 F.3d 251, 254 (5th Cir. 2000) (citing *United States v. Narviz-Guerra*, 148 F.3d 530, 537 (5th Cir. 1998)). As a result, the Court may adopt the findings in a PSR absent an affirmative showing by the defendant that the conclusions are incorrect. *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990); *United States v. Viar*, 277 F. App'x 266, 276 (4th Cir. 2008). A defendant's "mere objection" to the contents of a PSR is not sufficient to challenge the PSR's accuracy. *Terry*, 916 F.2d at 162. Instead, the defendant

4

"has an affirmative duty to make a showing that the information in the presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate." *Id.* Without such an affirmative showing by the defendant, the court may adopt the PSR's findings without further explanation. *United States v. Pryor*, 75 F. App'x 157, 160 (4th Cir. 2003).

Defendant objects to the Offense Conduct and Victim Impact sections of the PSR because she maintains she is innocent of the changes of which a jury found her guilty. The Court will overrule this objection. As Defendant notes in her position on sentencing, she may not "relitigate the question of her guilt at sentencing." (Def's Pos. on Sent. at 11.) Defendant acknowledges that "[t]his Court must assume the validity of the jury verdict and sentence Ms. Tsoa accordingly." (*Id.*) A jury found Defendant guilty beyond a reasonable doubt of the offense conduct listed in these sections of the PSR.

Moreover, there is no evidence on record that Mikail "mislead" Defendant throughout their dealings or that Wang provided false testimony at trial. (PSR at A-1.) Additionally, Defendant argues that it is "unlikely" that Defendant was told by her employer at First Empire to stop working with Mikail and that Defendant did not work with Wang to conceal income from her ex-husband. (Def. Pos. on Sent. at 11-12 n.4.) Defendant in

her position on sentencing advances several theories in support
of these assertions. (*See id.*) However, Defendant has not made
a sufficient affirmative showing that the statements at issue in
the PSR are incorrect or unreliable. Moreover, at trial Wang
testified regarding the commission she paid to Tsoa and the
circumstances under which she began working with Tsoa. The
Court finds Wang's testimony believable and credible.
Accordingly, the Court will overrule these objections.

B.    Objections to Facts in the PSR

Defendant objects to a number of other facts in the
PSR. First, Defendant's objection to the varied spellings of
her last name in the "Aliases" section is overruled. This
objection is irrelevant to any analysis of Defendant's sentence.

Second, Defendant's objection regarding co-conspirator
Cindy Wang's culpability is overruled. Paragraph 26 of the PSR,
in the Role in the Offense section reads: "it appears that Ms.
Tsoa and Ms. Wang were of equal culpability in the fraud scheme.
Neither has received a role adjustment." (PSR ¶ 26.) Defendant
agrees that she is not entitled to a mitigating role adjustment
pursuant to §3B1.2. The PSR advises that Ms. Wang likewise did
not receive a mitigating role adjustment. (PSR ¶ 26.)
Therefore, for purposes of the PSR's designation of their role
in the offense, Defendant and Ms. Wang both occupied the same
level of culpability in the fraud scheme. Additionally, the

6

arguments and evidence set forth by Defendant are insufficient to show that the PSR's statement regarding Defendant and Wang's culpability is unfounded.   (See Def.'s Pos. on Sent at 45-47.) Defendant states that Wang worked on a greater number of properties than Defendant, had a greater knowledge of the real estate industry and obtained a greater profit from the scheme. (Def.'s Pos. on Sent. at 46.)  As the Government notes, however, evidence adduced at trial showed that "Tsoa joined the conspiracy earlier [than Wang], had the direct relationship with Mikail and sought out and recruited Wang into the conspiracy." (Gov't Pos. on Sent. at 5.)   Thus, the weight of the evidence supports the PSR's statement that Defendant and Wang were equally culpable in the conspiracy for purposes of calculating a role adjustment.   The Court will overrule this objection.

Third, with regard to paragraph 27, Defendant argues that not all of the straw buyers were unsophisticated.  The Court will overrule this objection.  Defendant has not made any affirmative showing as to why the information contained in the presentence report is "untrue or inaccurate."  Terry, 916 F.2d at 162.  Defendant provides an e-mail from one straw borrower as evidence of his sophistication.  (Def.'s Pos. on Sent. Ex. 18 [Dkt. 159-18.])  This evidence is insufficient to demonstrate that paragraph 27 of the PSR is untrue or inaccurate with respect to the straw borrowers' sophistication.

Fourth, Defendant asserts that Dr. Boggio has also found that she has low to very low very intelligence and verbal memory. (PSR at A-2.) Pursuant to section 3553(a), the Court will consider the nature and circumstances of the offense and the history and characteristics of the Defendant when imposing a sentence. Defendant's personal characteristics are fully set forth in the PSR and in her position on sentencing. Defendant has not asserted that any of the facts reported in paragraph 48 of the PSR are inaccurate or incorrect. Accordingly, the Court will overrule this objection.

Finally, Defendant notes further details regarding her educational background and employment record contained in paragraphs 53 through 57 of the PSR. As stated above, the Court will consider Defendant's history and characteristics in imposing a sentence. Defendant has made no showing that the details of her employment record provided in the PSR are incorrect; accordingly the Court will overrule this objection.

C.  Order of Forfeiture

Defendant also argues that the Government has failed to satisfy its burden of proof with respect to the amount of gain reflected in the Motion for Preliminary Order of Forfeiture. (Def. Response to Gov't Mot. for Preliminary Order of Forfeiture [Dkt. 161] at 1.) Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 982(a)(2)(A)

and 21 U.S.C. § 853(p) the United States seeks entry of a
$45,010 money judgment against Defendant. (Gov't Mot. for
Preliminary Order of Forfeiture at 2.) A judgment of
forfeiture, imposed pursuant to 18 U.S.C. § 982 is governed by a
preponderance of the evidence standard. *See United States v.
Cherry*, 330 F.3d 658, 669 (4th Cir. 2003). On February 4, 2014,
Defendant filed her response to the Motion for Preliminary Order
of Forfeiture. [Dkt. 161] On February 5, 2014, the Government
filed its response and filed its amended Preliminary Order of
Forfeiture. [Dkt. 162.]

First, Defendant objects to Special Agent Soudrette's
("Soudrette") employment of a 50% commission in calculating
Defendant's gain from the scheme. Second, Defendant argues that
the Government's methodology double-counts the commission for
certain properties because it was likely that she was paid
directly at closing by the title company. Finally, Defendant
argues that this methodology is not "conservative" because it is
likely that Wang lied to the Government regarding paying
Defendant in cash.

The Court finds Special Agent Soudrette's employment
of a 50% rate for the First Empire loans to be a reasonable
methodology. This rate was based upon Wang's statements to
Soudrette during the investigation of this case and at trial.
(Soudrette Decl. ¶ 8.) For the Lifetime Financial transactions,

the Government and Defendant agree that she received a total of $21,457.50 as her share of the commissions brokered with Wang. (Gov't Reply at 2; Def.'s Resp. at 5.)

Likewise, Agent Soudrette's calculations do not appear to engage in any impermissible double-counting. Agent Soudrette relates that for two of the transactions, the disbursement statement reflects both a commission paid to Defendant through her mortgage brokerage company, First Empire Mortgage, and a disbursement paid directly to Defendant. Defendant argues that it is equally plausible that First Empire Mortgage had Horizon Title pay Defendant's commission directly at closing, rather than through her mortgage brokerage. There is no evidence in support of this assertion. Instead, the preponderance of the evidence in this case suggests that Defendant was paid her commissions on these loans through the mortgage brokerage company, as she was for the other properties at issue in this case. Indeed, as the Government notes, the disbursement paid directly to Defendant in these transactions was part of a "rebate fund," "a rebate due to be paid to the buyer in connection with the transaction." (Gov't Reply at 3 (citing Gov't Ex. 4-12).) Here, the rebate was paid to Defendant and Mikail, not the straw buyer. (*Id.*) Therefore, the Court finds no basis for concluding that these disbursements paid out of the

"rebate fund" were in fact Defendant's commission on the transaction.

Finally, Defendant asserts that Agent Soudrette's methodology is not "conservative" because Wang lied to the government regarding whether her payments to Defendant were made in cash or by check. Agent Soudrette's assertion that her methodology is "conservative" is well supported by evidence that Defendant received a 50% share on the Lifetime Financial loans and evidence that loan officers in other cases received a greater share of fees. (Soudrette Decl. ¶¶ 10, 12.) Contrary to Defendant's assertions, Wang's statements concerning her method of paying Defendant do not undercut this analysis of the commission rate. Accordingly, the Court will overrule Defendant's objections with regards to the Preliminary Order of Forfeiture.

## II. Conclusion

For these reasons, the Court will overrule Defendant's objections to the PSR and overrule Defendant's objections to the Preliminary Order of Forfeiture.

Defendant shall have fourteen (14) days from the date of sentencing, February 21, 2014, to file a Notice of Appeal.

/s/
James C. Cacheris
United States District Judge

February 21, 2014
Alexandria, Virginia

James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE